### SUWANNEE FRUIT & STEAMSHIP CO. et al. v. LAWSON, Deputy Com'r, U. S. Employees' Compensation Commission.

### No. 51 J.

District Court, S. D. Florida, Jacksonville Division.

Sept. 25, 1945.

Marks, Marks, Holt, Gray & Yates, of Jacksonville, Fla., for plaintiff.

Herbert S. Phillips, Dist. Atty., of Tampa, Fla., and Edith House, Asst. Dist. Atty., of Jasksonville, Fla., for defendant.

STRUM, District Judge.

The Motor-ship La Paz was sunk by enemy action in shallow water off the Florida coast in the summer of 1942. She grounded by the stern, with a substantial portion of her foreward part above water.

Suwannce Fruit & Steamship Company was engaged generally in the transportation of fruit and other goods by water, with its principal office in Jacksonville. This company acquired the sunken La Paz, and was lightening her by throwing overboard her cargo, so that she could be floated and towed to Jacksonville for repairs.

On September 30, 1942, John Davis was an employee of Suwannee Fruit & Steamship Company in this operation. He was working in one of the holds, slinging cargo to be hoisted to the deck and jettisoned. While Davis was looking upward from the hold, a leaky drum containing caustic soda struck against the side of the ship as the drum was being hoisted from the hold, some of the caustic soda falling into Davis' left eye. His eye immediately began to pain him, and soon thereafter he lost substantially all sight therein. Having previously lost the sight of the other eye, he is now industrially blind.

The insurer contends that the policy covered only liability arising in the employer's general steamship transportation business, and that when injured the employee was engaged in a salvage operation—an essentially different and more hazardous employment than that covered by the policy, to which a higher rate of premium was applicable. Both the employer and insurer also contend that the employee's loss of sight in his left eye was due to disease, not injury.

Although the policy states that the "post office address" of the employer is "Foot of Catherine Street, Jacksonville, Duval County, Florida," Item III of the policy provides "that the location of the premises or other work places of this Employer" are "State of Florida." This injury occurred within the State of Florida.

■ The policy covers generally the employer's steamship business. A "Longshoremen's Endorsement" attached thereto, however, provides that "if any employees of the employer named in Item III of the undermentioned policy are employed * * * in operations coming within the scope of the Longshoremen's and Harbor Workers' Compensation Act, which operations are not specifically described in the schedule of Item III of the undermentioned policy, it is hereby understood and agreed that said employer will keep a separate record of the payroll expended for such operations, and will pay a premium therefor computed at the policy rate for the classification of operations regularly applicable to the payroll of such employees increased by 35%." Thus it was contemplated that the policy might be extended to operations within the scope of the Federal Longshoremen's and Harbor Workers' Compensation Act. A fair construction of this clause is that if the employer engaged in such operations, the policy would cover it, but the employer must pay an additional premium. Salvage operations are not specifically covered by the policy.

■ While the ultimate purpose of the employer was to salvage this ship, this injured employee performed no duties peculiar to salvaging work. The activities in which this employee was immediately and solely engaged when injured, was a simple job of stevedoring. Before the actual salvage operations to raise the ship could be begun, it was necessary to lighten her by removing and jettisoning her cargo. This is what the employee was doing when injured. This might be said to be an operation preliminary to salvaging operations, as it was a step preliminary to raising the ship. In its essential nature, however, and so far as attendant hazards were concerned, this employee's duties differed little, if at all, from an ordinary stevedoring operation with the vessel alongside a dock. Certainly the operation of hoisting cargo from a hold, which is what the employee was doing, is no different, nor more hazardous, with the ship hard and fast aground a mile off shore, than it would have been with the ship afloat in a harbor. Nor does it alter the essential character of the employment because the cargo was being removed to lighten a grounded ship preparatory to floating her, rather than simply unloading the vessel in port.

This employee's duties were not concerned with any of those hazardous activities peculiar to salvage operations, such as under-water work, or handling acetylene torches, heavy cables, chains, or other gear. He was simply employed to remove the cargo from the hold, just as he would have done in port—essentially a stevedoring job, within the contemplation of the Longshoremen's Act. The Court therefore holds that the policy covers the activities of the injured employee.

■ As to the second contention: There is substantial evidence in the record to support the Compensation Commissioner's finding that the employee's loss of sight was due to injury, not to disease. Although there is also evidence which might have supported the opposite conclusion, it is not the duty of the Court to evaluate the evidence. That responsibility is committed to the Compensation Commissioner. As there is substantial evidence to support his

conclusion in that respect, the Court is without authority to disturb it.

Decree for defendant.